**MORGAN, LEWIS & BOCKIUS LLP**
*(Pennsylvania Limited Liability Partnership)*
502 Carnegie Center
Princeton, New Jersey 08540-7814
David A. McManus
Terry D. Johnson
Jason J. Ranjo
(609) 919-6689 (phone)
(609) 919-6701 (fax)
*Attorneys for Plaintiff*
*Colgate-Palmolive Company*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLGATE-PALMOLIVE COMPANY, | Case No.: |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| MEL RECI, ARBNOR RECI, ALIM RECI, and RECI & SONS, LLC, | |
| Defendants. | |

Plaintiff Colgate-Palmolive Company ("Plaintiff," "Colgate" or "the

Company"), by and through the undersigned counsel, Morgan, Lewis & Bockius,

LLP, hereby brings the following Verified Complaint[1] against Defendants Mel

---

[1]      The claims asserted herein are based on information available to Plaintiff to
date.  Plaintiff reserves all rights to add additional claims through amended
pleading following expedited discovery.

Reci ("Mr. Reci"), Arbnor Reci, Alim Reci, and Reci & Sons, LLC ("Reci & Sons") (collectively, "Defendants"), seeking injunctive relief and monetary damages, and alleges as follows:

## PARTIES

1.     Colgate is a corporation authorized under the laws of the State of Delaware, with its principal place of business in New York.  Colgate maintains a Technology Center at 909 River Road in Piscataway, New Jersey 08854 ("Technology Center").

2.     Mr. Reci is an individual who, upon on information and belief, currently resides at 135 Greenwood Avenue in Haskell, New Jersey 07420.

3.     Arbnor Reci is an individual who, upon on information and belief, currently resides at 135 Greenwood Avenue in Haskell, New Jersey 07420.

4.     Alim Reci is an individual who, upon on information and belief, currently resides at 11 Lakeside Avenue, Pompton Lakes, New Jersey 07442.

5.     Reci & Sons is a limited liability company that, upon information and belief, is authorized under the laws of the State of New Jersey, with its principal place of business located at 22 Laurel Avenue, Pompton Lakes, New Jersey 07442. Upon information and belief, Reci & Sons is owned and operated by Mr. Reci with his two sons, Arbnor and Alim Reci.

## JURISDICTION AND VENUE

6.  This Court has federal subject matter jurisdiction over Count One of the Complaint, which is a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1831 et seq., pursuant to 28 U.S.C. § 1331.  The DTSA is applicable here because the trade secrets at issue in this matter are related to Colgate's consumer products, which are used in, and are intended for use in, interstate and foreign commerce.

7.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Counts Two through Ten because they form part of the same case or controversy as Count One.

8.  This Court has personal jurisdiction over Mr. Reci, Arbnor Reci, Alim Reci and Reci & Sons because they all are residents of the State of New Jersey.

9.  Under 28 U.S.C. § 1391(c), venue is proper in the Newark vicinage of the U.S. District Court for the District of New Jersey because Mr. Reci worked for Colgate in Piscataway, New Jersey, most of the facts that give rise to this action occurred in New Jersey, and all of the Defendants are residents of New Jersey.  In addition, if not enjoined, Defendants will cause injury to Colgate in, among other places, New Jersey.

## FACTUAL ALLEGATIONS

**A.**   **Plaintiff's Trade Secrets, Confidential and Proprietary Information**

10.    Colgate is engaged in the business of providing a wide range of consumer products to billions of consumers throughout the world.  Specifically, Colgate and its subsidiaries research, develop, design, manufacture, market and sell consumer products in the areas of oral care, personal care, home care and pet nutrition.  These products are sold in all fifty (50) States and over two hundred (200) countries and territories around the world.

11.    Oral care, which includes toothpaste, is Colgate's largest product category in terms of sales volume.  Colgate subsidiaries around the world sell various toothpaste products, including, but not limited to, to distributors that sell these products in the Republic of Macedonia ("Macedonia").

12.    Colgate employs approximately 34,000 employees worldwide.

13.    The oral care industry in the United States and throughout the world, including the toothpaste market, is intensely competitive.  Colgate's status as a worldwide leader in this industry is due, in large part, to the superior efficacy and consumer experience provided by its oral care products.

14.    The success of Colgate's oral care business is the result of the development, maintenance, and stalwart protection of trade secrets and other confidential and proprietary information related to the research, development,

design, manufacturing, marketing and sales of the Company's vast portfolio of oral care products ("Confidential Information").

15.     Colgate's Confidential Information constitutes trade secrets, and this Information is not generally known in the oral care industry or in the public at large.  Colgate's Confidential Information was created through decades of the Company's investment of hundreds of millions of dollars, years of research and development, and strategic decision making.  Accordingly, the Confidential Information is vital to Colgate's overall success as a business both domestically and internationally, and would have significant value to the Company's competitors.

16.     Indeed, if any of Colgate's competitors were to gain access to the Company's Confidential Information, among other things, they could: (i) capture the technology and methodology used by Colgate to develop both existing and new oral care products, including, but limited to, toothpaste products; (ii) identify what Colgate believes to be underdeveloped product lines and markets around the world; (iii) preempt Colgate's anticipated marketing activities; and (iv) gain an understanding of Colgate's long-term strategic thinking and plans.

**B.     Colgate's Commitment to Protecting its Confidential Information**

17.     Colgate is committed to protecting its Confidential Information.  For example, Colgate regularly updates and distributes the Company's Code of

Conduct ("Code of Conduct") to all of its employees worldwide.  (See Exhibit A to the Verified Complaint).

18.    The Code of Conduct provides, in relevant part:

**WE PROTECT THE COMPANY'S TRADE SECRETS AND CONFIDENTIAL INFORMATION**

Colgate's trade secrets, other confidential information and much of its internal data are valuable assets.  A trade secret is information used in connection with Colgate's business that is not generally known or easily discovered and is competitively sensitive.  Therefore, efforts have been made to maintain its secrecy.  Protection of trade secrets and confidential information plays a vital role in our continued growth and ability to compete.

**WHAT ARE SOME EXAMPLES OF TRADE SECRETS OR OTHER CONFIDENTIAL INFORMATION?**

- Any formula, design, device or information used in our business that gives Colgate an opportunity to obtain an advantage over our competitors.
- Intellectual property that has not been made public
- Business research
- New product plans
- Non-public financial information or unpublished pricing information
- Manufacturing processes
- Any type of unreleased marketing or sales materials
- Legal opinions or attorney work product
- Unauthorized pictures or video taken while in a Colgate manufacturing or research facility
- Employee, customer or vendor lists
- Information regarding customer requirements, preferences, business habits and plans

While not complete, this list suggests the wide variety of information that needs to be safeguarded.  Trade secrets and other confidential information need not be patentable, but cannot be publicly known.

Your obligations with respect to Colgate's trade secrets and other confidential information are:

| **DO NOT** | Disclose this information to other Colgate people or third parties except on a "need to know" or "need to use" basis. |
| **DO NOT** | Engage third parties to handle this information without an appropriate review of the information technology security controls of the third party and an appropriate confidentiality agreement in place with the third party. |
| **DO NOT** | Post or discuss this information on publicly available websites or social media sites. |
| **DO NOT** | Use this information for your own benefit or the unauthorized benefit of persons outside of Colgate. |
| **DO** | Take all other reasonable measures to protect Colgate's trade secrets and confidential information. |

19.     The Code of Conduct also guards against conflicts of interest and expressly prohibits employees from, *inter alia*, "work[ing] for a competitor of Colgate's while working for Colgate" and "us[ing] Company time, facilities, resources, brands or logos for outside work that is not related to [the employee's] job at Colgate without authorization."

20.     Further, the Code of Conduct requires employees to "consult with Human Resources, the Global Legal Organization, Global Ethics & Compliance or [the employee's manager] before taking any action" that might conflict with the Company's "legitimate business interests."

21.     Colgate requires all of its employees to undergo annual training concerning the Company's Code of Conduct, and as part of that training, to electronically acknowledge that they have read, understand and have complied with all provisions of the Code of Conduct.

22.     Colgate expands upon the confidentiality provisions in the Code of Conduct in the Company's Global Business Practices Guidelines, which contains a separate chapter on Protecting Proprietary Information.  (See Exhibit B to the Verified Complaint).  This chapter stresses the importance of protecting Colgate's Confidential Information.  The Global Business Practices Guidelines set forth specific examples of the types of information that must be protected:

**Financial/Business**

- Corporate strategic plans; budgets; internal profit and loss data; raw material costs; identity of suppliers; customer information; financial or business research; new product plans; strategic objectives; financial or pricing information; customer and vendor lists; and information regarding customer requirements, preferences, business habits and plans.

**Sales/Marketing**

- New product developments and proposed launches; discontinuance of existing products; sale policies; product testing data; consumer testing data; market research; and proposed promotion and advertising campaigns.

**Technical Information**

- Manufacturing plant designs/redesigns; production machines and methods; machinery supplies; R&D reports; study results; product formulas; technologies; packaging and package designs; internally developed software; processes; inventions prior to public patent filing; and unpublished patent applications.

23.     Like the Code of Conduct, Colgate's Global Business Practices Guidelines provide various "Dos and Don'ts" regarding the handling of Confidential Information, including:

**Don't:**

. . . .

- Copy confidential documents for your own personal use, or provide confidential documents to third parties in the absence of either a written confidentiality agreement, or the express consent of your representative within the [Global Legal Organization]."

- Send confidential information to personal email accounts.

- Discuss proprietary information with family members, relatives, or social acquaintances.

24.     Colgate's Global Business Practices Guidelines apply and are made available to all of the Company's employees worldwide.

25.     In addition to its policies, Colgate implements numerous physical security measures to protect the Company's Confidential Information, including, *inter alia*, security personnel (staffed twenty-four hours a day/seven days a week) at the Technology Center, providing its employees with magnetic cards for entry into the building, recording entry and exits of employees into the building, ensuring that all visitors are accompanied by an escort while on Company premises, and restricting weekend access to certain employees.

26.     Colgate also limits employees' computer access to only those documents and information relevant to their job-related functions.  More specifically, documents and information related to the proprietary formulas and manufacturing processes for the Company's oral care products, including toothpaste, are stored in a password-protected database with limited access.

**C.**     **Mr. Reci's Application to, and Employment with, Colgate**

27.     On September 8, 1997, Mr. Reci completed a written employment application for a position at Colgate.  Upon information and belief, Mr. Reci holds a Bachelor's degree in Chemistry from the University of Prishtina in Kosovo, and a Master's degree in Chemistry from the University of Zagreb in Croatia.  Mr. Reci also purports to hold a Doctor of Philosophy degree in Cosmetic Industry – Formulation from Colgate University in New York.

28.     On September 9, 1997, Colgate hired Mr. Reci as a Research Technician in the oral care category at Colgate's Technology Center in Piscataway, New Jersey – his first position in the oral care industry.

29.     The Colgate employment application that Mr. Reci signed read: "Applicant agrees not to disclose . . . any trade secrets or information . . . acquired from the Company."  (See Exhibit C to the Verified Complaint).  In signing the employment application, Mr. Reci acknowledged that he had read and understood the terms of the application.

30.     Mr. Reci also completed the training course for Colgate's Code of Conduct from 2010 to 2017, and each time electronically acknowledged reading, understanding and complying with the Code of Conduct.

31.     Specifically, on September 30, 2014, Mr. Reci electronically signed an acknowledgement form confirming that he had "read, understood and complied with all provisions of the Code of Conduct," and that he would "continue to comply with the provisions of the Code of Conduct."  (See Exhibit D to the Verified Complaint).

32.     Mr. Reci electronically signed a similar acknowledgement form for the Code of Conduct on October 8, 2015.  (See Exhibit E to the Verified Complaint).  Mr. Reci also electronically acknowledged completing training programs on the Code of Conduct on October 10, 2016 and September 7, 2017.

33.     Mr. Reci worked in Colgate's oral care category for the entire tenure of his employment with the Company.  Mr. Reci began his employment with Colgate as a Research Technician.  He held that position until he was promoted in or about May 2000 to his final position of Scientist.

34.     As a Research Technician and Scientist for oral care in Colgate's Technology Center, Mr. Reci was responsible for conducting lab analysis/experiments and research operations on Colgate oral care products and prospective products, including toothpaste.  Among other things, Mr. Reci

recorded test data, documented test results, and analyzed and generated written reports concerning the results or trends in scientific tests of Colgate oral care products.

35.     In conducting these duties and responsibilities, Mr. Reci had access to and gained intimate knowledge of Colgate's Confidential Information, including the database containing proprietary formulas and manufacturing processes for the Company's products.  More specifically, Mr. Reci's position at Colgate provided him with access to Colgate's proprietary formulas, manufacturing processes, technology and research in oral care products, information regarding Colgate's product development decisions, the Company's oral care product market assessments, and Colgate's strategies and analyses regarding the Company's oral care product competitors.

**D.     Mr. Reci's Faithless and Disloyal Behavior While Employed by Colgate**

36.     In August 2012, unbeknownst to Colgate, Mr. Reci and his sons, Arbnor and Alim Reci, established a consumer hygiene and cleaning products company, Reci & Sons.

37.     Upon information and belief, in or about November 2015, Reci & Sons established a subsidiary company in Struga, Macedonia, Reci Enterprises, which was created to "specialize[] in the production and distribution of oral care,

personal hygiene and household cleaning products" in Macedonia and other countries in Southeastern Europe.

38.     Upon information and belief, Reci & Sons is the parent company of Reci Enterprises, and Mr. Reci and his sons have an ownership and/or investment interest in Reci Enterprises.  Mr. Reci never disclosed the existence of either company, or his ownership and/or investment interest in either company, to Colgate.

39.     Reci Enterprises has held itself out to the public as "a family owned and operated business with over 25 year's [sic] experience in research and development of Oral Care, Personal Care and Home Care products . . . ."  Upon information and belief, this representation is entirely premised on Mr. Reci's employment at, and experience, knowledge and information gained from Colgate.

40.     In or about July 2016, Reci Enterprises launched "Project Eurodent," a business plan to develop, manufacture and sell a new toothpaste brand, Eurodent, that Reci Enterprises anticipated would "rival[] and surpass[] that of name brand products" already being imported and sold in Macedonia and neighboring countries.  Upon information and belief, Eurodent is the only product sold by Reci & Sons and its affiliate companies.

41.     At the time Project Eurodent was launched, Reci Enterprises anticipated the construction of "research labs, and [a] manufacturing complex" in Macedonia "by the fourth quarter of Year 2017."

42.     Reci Enterprises valued the business at approximately $2,000,000, and projected that, once on the market, sales of Eurodent would "grow rapidly from Year 1 through Year 5."

43.     As the anticipated launch date for Eurodent in the fourth quarter of 2017 approached, Mr. Reci began sending his son, Arbnor Reci, Colgate's Confidential Information regarding the formulas and manufacturing processes for the Company's toothpaste products.

44.     In fact, on August 4, 2017, unbeknownst to Colgate, Mr. Reci sent Arbnor Reci an email from his Company email account, attaching a Chemical Hygiene Plan detailing Colgate's laboratory processes and procedures.  (See Exhibit F to the Verified Complaint).

45.     Colgate developed and refined the processes and procedures listed in this Chemical Hygiene Plan over decades and at significant expense.  These processes and procedures are not available to the public and are a key factor in Colgate's ability to deliver products of superior quality to its customers and have enabled the Company to earn the trust of those customers.

46.     In addition, on August 9, 2017, unbeknownst to Colgate, Mr. Reci sent Arbnor Reci an email from his Colgate email address, enclosing the proprietary formulas for several of Colgate's toothpaste products, including Hydris Toothpaste, an innovative and industry leading dry mouth hydrating toothpaste that *was not yet public;* Colgate was planning to launch Hydris in January 2018.  In his cover email, Mr. Reci instructed his son to "[p]rint th[ese] formulas and file them." (See Exhibit G to the Verified Complaint).

47.     The email also enclosed the proprietary formula for Colgate's Simply Kids toothpaste, a brand of toothpaste specifically researched and designed for the highly competitive children's toothpaste market.

48.     The toothpaste formulas are not available to the public at large and are unique to Colgate both in terms of the particular specifications of each of the listed components and the proportion of those components relative to one another.  To those inside the Company, these formulas bear Colgate's signature, certain "backbone" features used in many of Colgate's products – the very essence of Colgate's identity and an assurance of the quality and performance of the Company's products.

49.     Mr. Reci's August 9, 2017 email also attached the formula for Reci Enterprises' Eurodent toothpaste.  Significantly, that formula contained certain

Colgate signature "backbone" features that the Company has spent years and countless resources developing.

50.     Approximately two months later, on October 16, 2017, again unbeknownst to Colgate, Mr. Reci sent Arbnor Reci an email from his Colgate email address, enclosing Colgate's manufacturing process instructions for toothpaste products.  In his cover email, Mr. Reci told his son that he should "Read & Learn" from Colgate's stolen Confidential Information.  (See Exhibit H to the Verified Complaint).

51.     On or about March 17, 2018, Mr. Reci went out on an extended leave of absence from Colgate, ostensibly to receive treatment for a medical condition.[2]

52.     On September 19, 2018, while Mr. Reci was out on leave, Colgate received an anonymous call to the Company's Global Ethics and Compliance Hotline from an employee reporting Mr. Reci's misappropriation of the Company's Confidential Information (including Colgate formulas and manufacturing procedures), and his efforts to set up a competing business.  The

---

[2]     As alleged below, Mr. Reci engaged in a competing business while on disability leave with Colgate.  Should expedited discovery reveal that Mr. Reci's conduct is contrary to the medical limitations that formed the basis for his leave of absence, Plaintiff reserves the right to file an amended pleading asserting fraud and other claims related to Mr. Reci's receipt of disability insurance benefits through Colgate.

caller reported that he/she came across a press release that announced that Mr. Reci's family business, Reci Enterprises, was launching a personal care company in Macedonia.

53.    On September 6, 2018, the Macedonia Free Zones Authority, the governmental managing body responsible for developing various economic development zones in Macedonia, published a press release on its website stating that Mr. Reci's family business, Reci Enterprises, held a ground breaking ceremony for its new research and manufacturing facility in Macedonia.  (See Exhibit I to the Verified Complaint).

54.    Reci Enterprises is or will be a direct competitor to Colgate in the oral care industry in Macedonia.

55.    Upon information and belief, Reci Enterprises has already or plans to use the Confidential Information Mr. Reci misappropriated from Colgate to compete with Colgate in the oral care industry in Macedonia.

56.    Upon discovering Mr. Reci's malfeasance, Colgate immediately began investigating the extent of his misconduct and made several efforts to obtain explanations from Mr. Reci regarding his misappropriation of Colgate's Confidential Information, and to prevent the further misappropriation of Colgate's Confidential Information.

57.     As part of that investigation, in November 2018, Colgate called Mr. Reci on multiple occasions regarding the return of his Colgate-issued laptop computer, and on two separate occasions sent a prepaid box to Mr. Reci's home to facilitate the computer's return.  Upon information and belief, Mr. Reci deliberately evaded these efforts in an attempt to improperly retain, access, and misuse the Company's Confidential Information.  Finally, on or about December 3, 2018, Colgate sent a security person to Mr. Reci's home in New Jersey to retrieve his Colgate-issued computer.

58.     A preliminary review of Mr. Reci's Colgate-issued laptop computer revealed that, in the months before the return of his computer, while he was on a medical leave of absence and not performing any work for the Company, Mr. Reci copied Colgate's files from his laptop computer onto external storage devices.  In fact, this review showed that Mr. Reci inserted eight (8) separate external storage devices into the laptop between December 2, 2018 and December 3, 2018, the day the computer was finally returned.  Colgate's review further showed that, between March 2018 and December 2018, Mr. Reci accessed dozens of documents from those devices (and others) and the laptop computer, and that some of those files bore the name of specific Colgate products.

59.     Further, Colgate's review of Mr. Reci's Internet browser history revealed that, on many occasions between September 2018 and December 2018,

Mr. Reci accessed Colgate's internal, password-protected networks from his Company-issued laptop computer.

60.     All of this activity occurred while Mr. Reci was a Colgate employee on a medical leave of absence from the Company.

61.     Mr. Reci also appears to have deleted a substantial amount of data in an apparent effort to cover his tracks.  For example, Mr. Reci deleted from his Company-issued laptop the entire Lotus Notes software platform, which stored all of his historic Colgate emails prior to November 2016, when the Company transitioned to another email platform.  Upon information and belief, those deleted emails included information about Mr. Reci's competing business, which began in 2012.

62.     In total, based on Colgate's preliminary review, more than 17,000 individual files were deleted from Mr. Reci's Company-issued laptop while he was on a medical leave of absence, over 8,500 of which were deleted in November 2018 and December 2018, when Colgate began contacting Mr. Reci regarding the return of that device.

63.     Upon information and belief, Mr. Reci's mass deletion of files was intended to obfuscate his unlawful conduct.

64.     Since discovering Mr. Reci's misconduct, Colgate has made several unsuccessful attempts to contact him to discuss those unlawful activities.

65.     By letter dated December 26, 2018, Colgate terminated Mr. Reci's employment for material violations of Colgate's Code of Conduct, other Colgate policies, and applicable law.

## COUNT ONE
## VIOLATION OF THE FEDERAL DEFENSE OF TRADE SECRETS ACT
### (as to all Defendants)

66.     Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

67.     The actions of Defendants, as described above, constitute violations of one or more provisions of the DTSA.[3]

68.     The DTSA provides, in relevant part: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

69.     The DTSA further provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable . . . ." 18 U.S.C. § 1836(b)(3)(A).

---

[3]     Plaintiff reserves the right to file an amended pleading after expedited discovery asserting that Defendants' violations of the DTSA and other federal laws constitute predicate acts giving rise to civil claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO").

70.     Colgate's Confidential Information constitutes trade secrets that are not generally known in the oral care industry and are not readily ascertainable through proper means by Colgate's competitors, including the Company's proprietary formulas, manufacturing processes, technology and research in oral care products, and information regarding Colgate's product development decisions, oral care product market assessments, and strategies and analyses regarding Colgate's oral care product competitors.

71.     These trade secrets are related to Colgate's products in the oral care industry, which Colgate uses in interstate and foreign commerce.

72.     Colgate's Confidential Information derives independent economic value and benefit from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic benefit from the disclosure or use of the information.

73.     The Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company and on the basis that it would not be disseminated beyond those authorized to know it.

74.     As shown above, Mr. Reci and his family business, Reci & Sons, its affiliated companies, and their owners, including Arbnor and Alim Reci, have misappropriated or threatened to misappropriate Colgate's Confidential

Information by, among other things, using and disclosing, or threatening to use and disclose, the trade secrets without Colgate's consent.  Mr. Reci owed a duty to Colgate to maintain the secrecy of the Confidential Information and limit the use of the Confidential Information to Colgate's business interests.

75.     Defendants acquired, received and possess, or inevitably will acquire, receive and possess, Colgate's Confidential Information, knowing same to have been misappropriated without Colgate's authorization and in violation of Mr. Reci's contractual and common law commitments and obligations to Colgate.

76.     Upon information and belief, Defendants intend to convert Colgate's Confidential Information to the economic benefit of themselves, without Colgate's consent, to poach the customers, consumers, and clients or prospective customers, consumers, and clients of Colgate for Defendants' economic benefit.

77.     By virtue of the misappropriation and disclosure of Colgate's Confidential Information, Colgate will suffer immediate and irreparable injury.

78.     Colgate has no adequate remedy at law, and will suffer substantial and irreparable harm unless Defendants are enjoined as requested below.

79.     Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

## COUNT TWO
## VIOLATION OF THE NEW JERSEY TRADE SECRETS ACT
### (as to all Defendants)

80.     Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

81.     Mr. Reci emailed Colgate's Confidential Information from his Colgate email account to his son and business partner's personal email account, including, but not limited to, the formula for Colgate's Hydris Toothpaste and Colgate's manufacturing process instructions for toothpaste products.  This non-public, business information constitutes highly confidential Colgate trade secrets.

82.     Colgate's Confidential Information derives independent economic value by not being generally known to, and not being readily accessible, through proper means, by other persons who can obtain economic value from its disclosure or use, including competitors such as Reci & Sons, its affiliated companies, and their owners, including Arbnor and Alim Reci.  Colgate has spent significant sums, in terms of both financial and human resources, to develop and maintain this Confidential Information, which would be of great value to any competitor.

83.     Colgate has taken more than reasonable measures to maintain the secrecy of the Company's Confidential Information including, without limitation, requiring employees with access to such information to acknowledge receipt and ongoing compliance with the Company's Code of Conduct.

84.     The Confidential Information of Colgate was communicated to Mr. Reci while he was employed in a position of trust and confidence, and while bound by the Code of Conduct and other Company policies.

85.     Mr. Reci has misappropriated Colgate's Confidential Information, and Reci & Sons and its affiliated companies have acquired, received and possess, or will acquire, receive and possess, the Confidential Information misappropriated by Mr. Reci, knowing same to have been acquired by improper means, misappropriated without Colgate's authorization and in violation of Mr. Reci's contractual commitments and obligations to Colgate.

86.     By engaging in the conduct described above, Defendants intentionally, willfully and maliciously misappropriated, misused, revealed and disclosed Confidential Information, without Colgate's consent, and continue and will continue to do so.

87.     Colgate is therefore entitled to all relief available pursuant to the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 et seq.

88.     Colgate has no adequate remedy at law, and will suffer substantial and irreparable harm unless Defendants are enjoined as requested below.

89.     Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

## COUNT THREE
## BREACH OF DUTY OF LOYALTY
### (as to Defendant Mel Reci only)

90.     Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

91.     In his capacity as a Colgate employee and because he was in a position of trust and confidence with Colgate, Mr. Reci had access to Colgate's Confidential Information belonging to the Company.

92.     Because of his employment in a position of trust and confidence with Colgate and his contractual commitment to the Company, Mr. Reci owed Colgate a duty to keep confidential and to not use or disclose the Confidential Information belonging to the Company.  Mr. Reci knows of the common law and contractual obligations he owes to Colgate, and he knows that the disclosure of Colgate's Confidential Information would cause and constitute flagrant violations of these obligations.

93.     By virtue of Mr. Reci's unauthorized disclosure of Colgate's Confidential Information to Reci & Sons and its affiliated companies and owners, he has breached his duty of loyalty to Colgate, and Colgate will suffer immediate and irreparable injury.

94.     Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Mr. Reci by the granting of such relief.

## COUNT FOUR
## UNFAIR COMPETITION
### (as to all Defendants)

95.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

96.   As shown above, Mr. Reci possesses Colgate's Confidential Information, including, *inter alia*, proprietary formulas, technology and research in oral care products, which has not been disseminated to the public at large, which is not readily discoverable by competitors, and which is the subject of reasonable efforts on the part of Colgate to maintain its secrecy.

97.   Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company on the basis that it would not be disseminated beyond those authorized to know it.

98.   As a result of Mr. Reci's misappropriation of and unauthorized disclosure of Colgate's Confidential Information obtained as a result of Mr. Reci's employment with the Company, Mr. Reci and Reci & Sons, its affiliated companies, and their owners, including Arbnor and Alim Reci, will use Colgate's Confidential Information to unlawfully compete against Colgate.

99.     By having access to and using Colgate's Confidential Information and by improperly using such information to obtain an advantage in the oral care industry, Defendants will unfairly compete for business with Colgate.

100.    Colgate has no adequate remedy at law, and will suffer substantial and immediate irreparable harm unless Defendants are enjoined as requested below.

101.    Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

**COUNT FIVE**
**UNJUST ENRICHMENT**
**(as to all Defendants)**

102.    Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

103.     As shown above, Mr. Reci possesses Confidential Information, including, *inter alia*, proprietary formulas, technology and research in oral care products, which has not been disseminated to the public at large, which is not readily discoverable by competitors, and which is the subject of reasonable efforts on the part of Colgate to maintain its secrecy.

104.    Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company on the basis that it would not be disseminated beyond those authorized to know it.

105.   Mr. Reci's disclosure of Colgate's Confidential Information to assist his family business, Reci & Sons, its affiliated companies, and their owners, including Arbnor and Almin Reci, to compete with the Company in the oral care industry transgresses generally accepted standards for commercial competition, morality and law, and accordingly will result in unjust enrichment.

106.   Defendants' activities will cause Colgate to suffer both measurable and immeasurable business injuries that cannot be sufficiently compensated with monetary damages.

107.   Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

## COUNT SIX
## BREACH OF CONTRACT
### (as to Defendant Mel Reci only)

108.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

109.   As shown above, Mr. Reci possessed Colgate's Confidential Information, including, *inter alia*, proprietary formulas, manufacturing processes, technology and research in oral care products, and information regarding Colgate's product development decisions, oral care product market assessments, and strategies and analyses regarding Colgate's oral care product competitors, which Confidential Information has not been disseminated to the public at large, is not

readily discoverable by competitors, and which is the subject of reasonable efforts on the part of Colgate to maintain its secrecy.

110.   As shown above, Mr. Reci signed Colgate's employment application and electronically acknowledged receipt of the Company's Code of Conduct, which contains express provisions restricting Mr. Reci from disclosure of Colgate's Confidential Information.

111.   Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company on the basis that it not be disseminated beyond those authorized to know it.

112.   Mr. Reci's misappropriation of and unauthorized disclosure of Colgate's Confidential Information obtained as a result of Mr. Reci's employment with the Company, constitutes a breach of the express terms of, without limitation, his signed employment application and the Company's Code of Conduct.

113.   Colgate has suffered and will continue to suffer damages as a result of Mr. Reci's contractual breach.

114.   Colgate has no adequate remedy at law, and will suffer substantial and immediate irreparable harm unless Mr. Reci is enjoined as requested below.

115.   Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Mr. Reci by the granting of such relief.

## COUNT SEVEN
## TORTIOUS INTERFERENCE WITH CONTRACT
### (as to Defendants Arbnor Reci, Alim Reci, and Reci & Sons only)

116.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

117.   As shown above, Mr. Reci signed Colgate's employment application and electronically acknowledged receipt of the Company's Code of Conduct which contains express provisions restricting Mr. Reci from disclosure of Colgate's Confidential Information.

118.   Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company on the basis that it not be disseminated beyond those authorized to know it.

119.   Reci & Sons, its affiliated companies, and their owners, including Arbnor and Alim Reci, were aware of Mr. Reci's contractual obligations to Colgate but intentionally interfered with those obligations by inducing Mr. Reci to misappropriate and disclose without authorization Colgate's Confidential Information, which constitutes a breach of the express terms of, without limitation, his signed employment application and the Company's Code of Conduct.

120.   Colgate has suffered and will continue to suffer damages as a result of Mr. Reci's contractual breach.

121.   Colgate has no adequate remedy at law, and will suffer substantial and immediate irreparable harm unless Defendants are enjoined as requested below.

122.   Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

**COUNT EIGHT**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**(as to all Defendants)**

123.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

124.   As shown above, Mr. Reci possesses Confidential Information, including, *inter alia*, proprietary formulas, technology and research in oral care products, which has not been disseminated to the public at large, which is not readily discoverable by competitors, and which is the subject of reasonable efforts on the part of Colgate to maintain its secrecy.

125.   Confidential Information possessed by Colgate was communicated to Mr. Reci in confidence by the Company, solely in connection with his employment with the Company on the basis that it would not be disseminated beyond those authorized to know it.

126.   As a result of Mr. Reci's misappropriation of and unauthorized disclosure of Colgate's Confidential Information obtained as a result of Mr. Reci's employment with the Company, Mr. Reci, Reci & Sons, and its affiliated

companies and their owners, including Arbnor and Alim Reci, have used Colgate's Confidential Information to unlawfully compete against Colgate and obtain an advantage in the oral care industry.  Accordingly, Defendants intentionally and maliciously interfered with Colgate's contractual and business relationships with its customers and consumers, from which Colgate had a reasonable probability of continued economic benefit.

127.   Defendants' activities will cause Colgate to suffer both measurable and immeasurable business injuries that cannot be sufficiently compensated with monetary damages.

128.   Greater injury will be inflicted upon Colgate by the denial of this relief than will be inflicted on Defendants by the granting of such relief.

**COUNT NINE**
**COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**
**(as to all Defendants)**

129.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

130.   Upon information and belief, Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing Colgate's computer systems – Mr. Reci's Colgate-issued laptop computer and Colgate's computer networks – for interstate commerce or communications, without authorization, and by obtaining information from such a computer, including, but

not limited to, Colgate Confidential Information, and causing significant damage to Colgate.

131.   Mr. Reci's Colgate-issued computer and computer systems accessed in the course of and in furtherance of Mr. Reci's employment with Colgate constitute a "protected computer" within the meaning of 18 U.S.C. § 1030.

132.   Upon information and belief, Colgate has been harmed by these violations, and its harm includes, without limitation, improper access of Colgate's Confidential Information, the potential loss of its customers and consumers, and the cost in conducting a damages assessment and retaining a third-party computer forensics expert to investigate.

133.   As a result of Defendants' conduct, upon information and belief, Colgate has sustained damage or loss of not less than $5,000.00, including, but not limited to, losses sustained in responding to Mr. Reci's actions, investigating Mr. Reci's malfeasance and taking remedial steps to prevent Mr. Reci's further offenses.

## COUNT TEN
## CONVERSION
### (as to all Defendants)

134.   Plaintiff incorporates by reference herein the allegations in the above paragraphs of the Complaint as if fully set forth herein.

135.   At all times, Colgate retained all right, title, and interest in the Confidential Information taken by Defendants.

136.   Defendants knowingly, dishonestly, and intentionally took, copied and retained Colgate's Confidential Information without authorization.

137.   Defendants acts constitute a knowing, unlawful and intentional conversion of Colgate's Confidential Information for Defendants' economic benefit and to the economic detriment of Colgate.

138.   As a direct and proximate result of this conversion, Colgate has been significantly damaged, the precise amount to be determined at trial.

139.   By reason of the acts alleged herein, Colgate is entitled to injunctive relief to compel the return of Colgate's Confidential Information, the removal of such information from any and all electronic devices or systems, and all relief necessary to prevent further use and/or dissemination thereof.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Colgate respectfully requests the Court to award the following relief:

A.   A temporary restraining order, preliminary injunction and permanent injunction: (i) enjoining and restraining Reci & Sons from conducting any and all business operations; (ii) enjoining and restraining Mel Reci, Arbnor Reci, and Alim Reci from engaging in any business competitive with Colgate, including, but

not limited to, the oral care, personal care, home care, and pet nutrition businesses; (iii) enjoining and restraining Defendants from using or disclosing Confidential Information of Colgate for any reason; and (iv) enjoining and restraining Defendants from interfering with Colgate's contractual and business relationships with the Company's customers;

B.      A temporary restraining order, preliminary injunction, and permanent injunction, requiring Defendants to immediately return all of Colgate's Confidential Information taken during and/or after Mr. Reci's employment with Colgate, including without limitation, product research, product information, product designs, product applications, technical processes, product test and performance results;

C.      An order permitting Colgate to conduct expedited discovery in accordance with the Company's proposed schedule set forth in its Order to Show Cause filed herewith;

D.      An order requiring Defendants to preserve all documents, electronically stored information and other information related to the factual allegations and claims contained within the Verified Complaint, including any communications, text messages or emails on personal electronic devices, such as cellular telephones, or stored in cloud storage accounts;

E.     An order enjoining and restraining Defendants from publicly filing any documents in this case or otherwise disclosing any specific information regarding the products of Colgate, Reci & Sons or any of its affiliate companies, including, but not limited to, formulas and manufacturing instructions;

F.     A judgment against Defendants pursuant to the above claims for relief, in the amount of damages as may be proven at trial, including the disgorgement of any revenue or compensation received as a result of Defendants' misconduct, and allowing recovery of punitive damages as may be appropriate;

G.     An order awarding Colgate pre- and post-judgment interest as allowed by law;

H.     An Order directing Defendants to pay the attorneys' fees and costs incurred by Colgate in these proceedings; and

I.     Such other and further relief as the Court deems just and appropriate.

This 26th day of December, 2018

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

 s/ Terry D. Johnson
David A. McManus
Terry D. Johnson
Jason J. Ranjo
*Attorneys for Plaintiff*
*Colgate-Palmolive Company*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that the matter in controversy is not the subject of any other action

in any Court, or of any pending arbitration or administrative proceeding.

By: <u>  s/ Terry D. Johnson          </u>
                   Terry D. Johnson

Dated:        December 26, 2018

## VERIFICATION

I, Raj Kohli, verify that I am Vice President Global Technology at Colgate-Palmolive Company, Plaintiff in this proceeding, and that, based on my personal knowledge and my review of Colgate documents and information, the facts set forth in the attached Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true, and (2) legal conclusions, for which I expressly defer to Plaintiff's counsel. I understand that false statements herein are subject to the penalties of 28 U.S.C. §1746 relating to sworn declarations to authorities.

_____

Raj Kohli
Vice President Global Technology
Colgate-Palmolive Company

Dated:        December _22_, 2018