**MORGAN, LEWIS & BOCKIUS LLP**
*(Pennsylvania Limited Liability Partnership)*
502 Carnegie Center
Princeton, New Jersey 08540-7814
David A. McManus
Terry D. Johnson
Jason J. Ranjo
(609) 919-6689 (phone)
(609) 919-6701 (fax)
*Attorneys for Plaintiff*
*Colgate-Palmolive Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLGATE-PALMOLIVE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> MEL RECI, ARBNOR RECI, ALIM RECI, and RECI & SONS, LLC, <br><br> Defendants. | Case No.: <br><br> **Oral Argument Requested** <br><br> *ELECTRONICALLY FILED* |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER, <u>PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY</u>

I.      PRELIMINARY STATEMENT .................................................................1

II.     STATEMENT OF FACTS ........................................................................4

        A.      Plaintiff's Trade Secrets, Confidential and Proprietary
                Information ..................................................................................4

        B.      Colgate's Commitment to Protecting its Confidential
                Information ..................................................................................5

        C.      Mr. Reci's Application to, and Employment with, Colgate ...............7

        D.      Mr. Reci's Faithless and Disloyal Behavior While Employed by
                Colgate........................................................................................8

                1.      Mr. Reci starts a family consumer hygiene business with
                        the intent to compete with Colgate in Macedonia. ...................8

                2.      Mr. Reci misappropriates Colgate's trade secrets and
                        breaks ground on a facility to manufacture products
                        based on the Company's formulas and manufacturing
                        processes. ...................................................................10

                3.      Colgate discovers Mr. Reci's misconduct and terminates
                        his employment. ...........................................................12

III.    ARGUMENT .......................................................................................14

        A.      The Applicable Legal Standard For Granting A Temporary
                Restraining Order And A Preliminary Injunction............................14

        B.      Colgate Will Prevail On The Merits. .............................................15

                1.      Colgate will establish violations of the Federal Defend
                        Trade Secrets Act and the New Jersey Trade Secrets Act.
                        (Counts One and Two)....................................................15

                        a.      Defendants possess trade secrets belonging to
                                Colgate.............................................................16

                        b.      Defendants have misappropriated Colgate's trade
                                secrets. .............................................................18

                2.      Colgate will establish that Mr. Reci breached his duty of
                        loyalty while employed by Colgate (Count Three). ...............19

                3.      Colgate will establish that Defendants engaged in unfair
                        competition and were unjustly enriched (Counts Four and
                        Five). .........................................................................21

4.      Colgate will establish that Mr. Reci breached the confidentiality provisions in his employment application and Colgate's Code of Conduct (Count Six). ..........................24

5.      Colgate will establish that Defendants tortiously interfered with Mr. Reci's contractual obligations to the Company (Count Seven)..........................................................25

6.      Colgate will establish that Defendants tortiously interfered with the Company's economic advantages with existing customers (Count Eight). ...........................................26

7.      Colgate will establish that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Nine). ....................................................................28

C.     Colgate Will Suffer Irreparable Harm If The Injunction Is Denied...................................................................................29

D.     The Balance Of Equities Weighs In Favor Of Colgate.....................30

E.     Public Policy Strongly Favors An Injunction Against Defendants...............................................................................31

F.     The Court Should Grant Colgate Leave To Take Expedited Discovery...............................................................................32

IV.    CONCLUSION.............................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acierno v. New Castle Cnty.,*
    40 F.3d 645 (3d Cir. 1994)................................................................................14

*Advanced Fluid Sys., Inc. v. Huber,*
    28 F. Supp. 3d 306 (M.D. Pa. 2014) .................................................................28

*Ameriprise Fin. Servs., Inc. v. Koenig,*
    No. CIV.A. 11-6140-NLH, 2012 WL 379940 (D.N.J. Feb. 6, 2012)........................16, 17, 29

*Avaya Inc., RP v. Telecom Labs, Inc.,*
    838 F.3d 354 (3d Cir. 2016)..............................................................................22

*Baseline Servs., Inc. v. Kutz,*
    No. A-5214-09T3, 2011 WL 3714974 (App. Div. Aug. 25, 2011) ........................................21

*Bimbo Bakeries USA, Inc. v. Botticella,*
    613 F.3d 102 (3d Cir. 2010)........................................................................14, 31

*Bimbo Bakeries USA, Inc. v. Botticella,*
    No. CIV.A. 10-0194, 2010 WL 571774 (E.D. Pa. Feb. 9, 2010), aff'd, 613
    F.3d 102 (3d Cir. 2010)..............................................................................32

*Bldg. Inspection Underwriters, Inc. v. Mun. Code Inspections, Inc.,*
    No. A-2605-13T3, 2016 WL 1589870 (App. Div. Apr. 21, 2016)........................................21

*Cameco, Inc. v. Gedicke,*
    157 N.J. 504 (1999) ..................................................................................19, 20

*Dam Things from Denmark v. Russ Berrie & Co.,*
    173 F. Supp. 2d 277 (D.N.J. 2001), *rev'd on other grounds*, 290 F.3d 548 (3d
    Cir. 2002) ..............................................................................................15

*Fisher Bioservices, Inc. v. Bilcare, Inc.,*
    No. 06–567, 2006 WL 1517382 (E.D. Pa. May 31, 2006) ........................................31

*Grow Co., Inc. v. Chokshi,*
    2012 WL 715978 (App. Div. Mar. 7, 2012) ........................................................17

*Heraeus Materials Tech. LLC v. Tung Pham,*
    No. CV 11-2965, 2011 WL 13227695 (E.D. Pa. June 29, 2011) ..........................................32

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
   282 N.J. Super. 140 (App. Div. 1995) ............................................................26, 27

*IMS Health Info. Sols. USA v. Lempernesse*,
   No. CV 15-7561 (JLL), 2016 WL 236214 (D.N.J. Jan. 19, 2016) ..........................32

*Industrial Elecs. Corp. v. Cline*,
   330 F.2d 480 (3d Cir. 1964)....................................................................................29

*Karlin v. Weinberg*,
   77 N.J. 408 (1978) ..................................................................................................24

*Lamorte Burns & Co. v. Walters*,
   167 N.J. 285 (2001) ....................................................................................19, 20, 21

*LaPlace v. Briere*,
   404 N.J. Super. 585 (App. Div. 2009) ....................................................................28

*LifeCell Corp. v Tela Bio, Inc.*,
   No. SOM-C-12013-15, 2015 WL 4082323 (Ch. Div. May 12, 2015) ....................26

*McCalley v. Samsung Electronics America, Inc.*,
   No. 07-2141 (JAG), 2008 WL 878402 (D.N.J. Mar. 31, 2008) ..............................23

*McCue v. Deppert*,
   21 N.J. Super. 591 (App. Div. 1952) ......................................................................27

*Mifflinburg Tel., Inc. v. Criswell*,
   277 F. Supp. 3d 750, 790 (M.D. Pa. 2017) ............................................................28

*Murphy v. Implicito*,
   392 N.J. Super. 245 (App. Div. 2007) ....................................................................24

*Napier v. Pub. Serv. Elec. & Gas Co.*,
   No. A-4532-12T1, 2014 WL 3444670 (App. Div. July 15, 2014) ..........................23

*National Starch & Chem. Corp. v. Parker Chem. Corp.*,
   219 N.J. Super. 158 (App. Div. 1987) ....................................................................30

*Par Pharm., Inc. v. QuVa Pharma, Inc.*,
   2018 WL 1374023 (D.N.J. Mar. 16, 2018)......................................................15, 31

*Payroll Assocs., LLC v. Adaptasoft, Inc.*,
   No. 12CV6375NLHJS, 2012 WL 12888566 (D.N.J. Oct. 24, 2012) ....................31

*Platinum Mgmt., Inc. v. Dahms*,
   285 N.J. Super. 274 (Law Div. 1995) ............................................................17, 20

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
  116 N.J. 739 (1989) ...................................................................................26

*Reckitt Benckiser Inc. v. Tris Pharma, Inc.*,
  2011 WL 773034 (D.N.J. Feb. 28, 2011) ...............................................17

*Ryan v. Carmona Bolen Home for Funerals*,
  341 N.J. Super. 87 (App. Div. 2001) .....................................................22

*Rycoline Prods., Inc. v. Walsh*,
  334 N.J. Super. 62 (App. Div. 2000) .....................................................17

*Samuel, Son & Co. v. Beach*,
  No. CIV.A. 13-128, 2013 WL 4855325 (W.D. Pa. Sept. 11, 2013)........32

*Score Bd. v. Upper Deck Co.*,
  959 F. Supp. 234 (D.N.J. 1997) .............................................................26

*Subcarrier Comm'n, Inc. v. Day*,
  299 N.J. Super. 634 (App. Div. 1997) ...................................................29

*Torsiello v. Strobeck*,
  955 F. Supp. 2d 300 (D.N.J. 2013) ........................................................22

*Velop, Inc. v. Kaplan*,
  301 N.J. Super. 32 (App. Div. 1997) .....................................................25

*Wyrough & Loser, Inc. v. Pelmer Laboratories, Inc.*,
  376 F.2d 543 (3d Cir. 1967)...................................................................29

STATUTES

Computer Fraud and Abuse Act ...........................................................27, 28

Defend Trade Secrets Act ................................................................15, 16, 18

New Jersey Trade Secrets Act .....................................................15, 16, 18 19

OTHER AUTHORITIES

Federal Rule of Civil Procedure 26(d)(1) ....................................................32

## I.   PRELIMINARY STATEMENT

If any case warrants preliminary injunctive relief to protect a plaintiff from egregious misconduct and immeasurable harm, it is this one.  Defendant Mel Reci ("Mr. Reci") is a former scientist for Plaintiff Colgate-Palmolive Company ("Plaintiff," "Colgate" or "the Company") who was employed by the Company for more than 21 years.  As a scientist for Colgate, Mr. Reci had access to the Company's confidential and trade secret information, including product formulas and manufacturing instructions for Colgate toothpaste.   Despite his statutory, contractual, and common law duties to safeguard that information, in 2012, Mr. Reci covertly started an oral care business – Defendant Reci & Sons, LLC ("Reci & Sons") – with his sons and business partners – Defendants Arbnor and Alim Reci – expressly for the purpose of competing with Colgate.  And, in 2017, Mr. Reci began stealing Colgate trade secrets and disclosing them to his sons – who are not Colgate employees and not otherwise authorized to receive such information – in an attempt to replicate the Company's products.  Indeed, an initial review of emails Mr. Reci sent from his Colgate email address revealed:

- On August 9, 2017, Mr. Reci sent one of his sons, and business partners, proprietary formulas for several of Colgate's toothpaste products and directed him to "**[p]rint th[ese] formulas and file them**."

- Mr. Reci also sent one of his sons, and business partner, the formula for their own toothpaste brand, "Eurodent," which contains formulaic

specifications **unique to and modeled after Colgate's proprietary products**.

- On October 16, 2017, Mr. Reci sent one of his sons, and business partner, Colgate's proprietary process for manufacturing toothpaste products, telling him to "**Read & Learn**."

As alarming as this conduct is, it is just the tip of the iceberg. Colgate has only recently discovered Mr. Reci's unlawful and tortious conduct and has yet to complete a full forensic analysis of his Company-issued computer. A preliminary review of that computer, however, reveals that Mr. Reci's illicit conduct continued into 2018 when he downloaded a number of highly sensitive Colgate files (including additional Colgate formulas) to external devices before deleting a significant amount of data to cover his tracks. Meanwhile, a press release reported to Colgate by an anonymous caller to the Company's Global Ethics and Compliance Hotline shows that, in September 2018, a Reci & Sons subsidiary, owned and operated by Mr. Reci and his sons, broke ground on a toothpaste manufacturing facility in the Republic of Macedonia, where Colgate is the leading oral care brand.

This preliminary evidence of Defendants' trade secrets misappropriation and unfair competition (and criminal behavior) is overwhelming. If not enjoined, Defendants will continue to harm Colgate by using the Company's most sensitive trade secrets as the foundation for a competing venture. The harm that Defendants will inevitably cause and continue to cause to Colgate if undeterred cannot be

2

quantified or repaired after the fact, and the status quo should be maintained while the parties have the opportunity to conduct expedited discovery, as well as a forensic examination of all of Defendants' electronic devices.

Based on the foregoing, as discussed more fully below, Colgate requests that Reci & Sons be immediately restrained and enjoined from conducting ***any and all business operations***, and that the individual defendants, Mr. Reci, Arbnor Reci, and Alim Reci, be immediately restrained and enjoined from engaging in any business competitive with Colgate, including, but not limited to, the oral care, personal care, home care, and pet nutrition businesses.  Such a comprehensive and permanent restraint is required and warranted because the entire foundation of Reci & Sons was built upon the stolen trade secrets of Colgate.  Further, Colgate requests that Defendants be restrained and enjoined from using or further disclosing Colgate's confidential and trade secrets information for any reason, and from tortiously interfering with Colgate's contractual and business relationships with the Company's customers and consumers.  Colgate also seeks an order permitting expedited discovery to:  (i) depose all Defendants; (ii) compel the return of all Colgate property, including all company-issued devices and confidential and trade secrets information belonging to the Company; (iii) compel the production of electronic discovery from Defendants regarding the illegal misappropriation of Colgate's confidential information and trade secrets; and (iv) compel the

production of all electronic storage devices and the passwords for all cloud storage and email accounts used to download Colgate information for purposes of conducting a forensic analysis of those devices and accounts.

If this relief is not granted, Colgate faces significant risk and irreparable damage to its business, including the loss of customer and consumer relationships and continued dissemination of the proprietary formulation and manufacturing information it has spent years and countless other resources developing.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Trade Secrets, Confidential and Proprietary Information

Colgate is a global provider of consumer products in the areas of oral care, personal care, home care, and pet nutrition.  (Verified Complaint ("Compl.") ¶ 10.) Colgate is the global leader in toothpaste sales around the world.  (*Id.* ¶¶ 11, 13.) The toothpaste market in the United States and throughout the world – as with oral care industry as a whole – is intensely competitive.  (*Id.* ¶ 13.)

Colgate's status as a worldwide leader in the oral care industry is due, in large part, to the superior efficacy and consumer experience provided by its products.  (*Id.*)  Those crucial elements are the result of the development, maintenance and stalwart protection of trade secrets and other confidential and proprietary information related to the research, development, design,

manufacturing, marketing and sale of the Company's portfolio of products
("Confidential Information").  (*Id.* ¶ 14.)

Colgate's Confidential Information was created through decades of the
Company's investment of millions of dollars, years of research and development,
and strategic decision making.  (*Id.* ¶ 15.)  This Confidential Information is vital to
Colgate's overall success as a business both domestically and internationally, and
would have significant value to the Company's competitors.  (*Id.*)

### B.   Colgate's Commitment to Protecting its Confidential Information

Colgate is committed to protecting its Confidential Information.  (*Id.* ¶ 17.)
For example, the Company regularly updates and makes available its Code of
Conduct ("Code of Conduct") to all of its employees worldwide.  (*Id.* ¶ 17, Ex. A.)
The Code of Conduct clearly defines and provides examples of specific trade
secrets, including "[a]ny formula, design, device or information used in [Company]
business that gives Colgate an opportunity to obtain an advantage over [the
Company's] competitors."  (*Id.* ¶ 18, Ex. A.)  The Code of Conduct also explains
that such information is a "valuable asset[]" that "plays a vital role in [Colgate's]
continued growth and ability to compete," and "is not generally known or easily
discovered and is competitively sensitive."  (*Id.*)

Accordingly, the Code of Conduct strictly prohibits Colgate employees
from, among other things, "[d]isclos[ing] [trade secret] information to other

5

Colgate people or third parties except on a 'need to know' or 'need to use'" basis, and from "[u]s[ing] this information for [one's] own benefit or the unauthorized benefit of persons outside of Colgate." (*Id.*)  The Code of Conduct further prohibits employees from, *inter alia*, "work[ing] for a competitor of Colgate's while working for Colgate" and requires employees to "consult with Human Resources, the Global Legal Organization, Global Ethics & Compliance or [the employee's manager] before taking any action" that might conflict with the Company's "legitimate business interests." (*Id.* ¶ 19-20.)  Colgate requires all of its employees to undergo annual training concerning the Code of Conduct, and as part of that training, to electronically acknowledge that they have read, understand and have complied with all provisions of the Code of Conduct. (*Id.* ¶ 21.)

In addition, Colgate's Global Business Practices Guidelines contain a separate chapter on Protecting Proprietary Information. (*Id.* ¶ 22, Ex. B.)  That chapter stresses the importance of protecting Colgate's Confidential Information, and sets forth specific examples of the types of information that must be protected, including "[m]anufacturing plant designs/redesigns; production machines and methods; machinery supplies; R&D reports; study results; [and] product formulas." (*Id.*)  Like the Code of Conduct, the Global Business Practices Guidelines apply and are made available to all of the Company's employees worldwide. (*Id.* ¶ 23.)

In addition to its policies, Colgate implements numerous physical security measures to protect its Confidential Information, including security personnel that are staffed twenty-four hours a day/seven days a week, magnetic cards for entry into the Company's buildings, requiring that all visitors be accompanied by an escort while on Company premises, and restricting weekend access to the Company's buildings to certain employees.  (*Id.* ¶ 25.)  Colgate also limits employees' computer access to documents and information related to the Company's proprietary formulas and manufacturing processes by requiring unique passwords that are provided only to Colgate employees who require access for their specific job functions.  (*Id.* ¶ 26.)

### C.  <u>Mr. Reci's Application to, and Employment with, Colgate</u>

On September 9, 1997, Colgate hired Mr. Reci as a Research Technician supporting the oral care category at Colgate's Technology Center in Piscataway, New Jersey.  (*Id.* ¶ 27.)  In applying for that position, Mr. Reci completed and signed a written employment application agreeing "not to disclose . . . any trade secrets or information . . . acquired from the Company."  (*Id.* ¶ 29, Ex. C.)  Mr. Reci also completed the training course for Colgate's Code of Conduct from 2010 to 2017, and each time electronically acknowledged reading, understanding and complying with the Code of Conduct.  (*Id.* ¶¶ 30-32.)

Mr. Reci was employed in Colgate's oral care category for the entire tenure of his employment with the Company, starting as a Research Technician and eventually receiving a promotion to Scientist.  (*Id.* ¶ 33.)  In both roles, Mr. Reci was responsible for conducting lab analysis/experiments and research operations on Colgate products and prospective products, including toothpaste.  (*Id.* ¶ 34.) Among other things, Mr. Reci recorded test data, documented test results, and analyzed and generated written reports concerning results or trends in tests of Colgate products.  (*Id.*)  In conducting these duties and responsibilities, Mr. Reci had access to and gained intimate knowledge of Colgate's Confidential Information, including the secured and restricted database containing the proprietary formulas and manufacturing processes for the Company's products. (*Id.* ¶ 35.)

### D. Mr. Reci's Faithless and Disloyal Behavior While Employed by Colgate

#### 1. Mr. Reci starts a family consumer hygiene business with the intent to compete with Colgate in Macedonia.

In August 2012, unbeknownst to Colgate, Mr. Reci and his sons, Arbnor and Alim Reci, established a consumer hygiene and cleaning products company, Reci & Sons.  (*Id.* ¶ 36.)  Upon information and belief, in or about November 2015, Reci & Sons established a subsidiary company in Struga, Macedonia, Reci Enterprises, which was created to "specialize[] in the production and distribution

of oral care, personal hygiene and household cleaning products" in Macedonia and surrounding countries.  (*Id.* ¶ 37.)  Reci Enterprises has held itself out to the public as "a family owned and operated business with over 25 year's [sic] experience in research and development of Oral Care, Personal Care and Home Care products . . . ."  (*Id.* ¶ 39.)  Upon information and belief, this representation is entirely premised on Mr. Reci's employment at, and experience, knowledge and information gained from Colgate.  (*Id.*)

In or about July 2016, Reci Enterprises launched "Project Eurodent," a business plan to develop, manufacture and sell a new toothpaste brand, Eurodent, that Reci Enterprises anticipated would "rival[] and surpass[] that of name brand products" already being imported and sold in Macedonia and neighboring countries.  (*Id.* ¶ 40.)  At the time Project Eurodent was launched, Reci Enterprises anticipated the construction of "research labs, and [a] manufacturing complex" in Macedonia "by the fourth quarter of Year 2017."  (*Id.* ¶ 41.)  Reci Enterprises valued the fledgling business at approximately $2,000,000, and projected that, once on the market, sales of Eurodent would "grow rapidly from Year 1 through Year 5."  (*Id.* ¶ 42.)

### 2. Mr. Reci misappropriates Colgate's trade secrets and breaks ground on a facility to manufacture products based on the Company's formulas and manufacturing processes.

As the anticipated launch date for Eurodent in the fourth quarter of 2017 approached, Mr. Reci began sending his son, Arbnor Reci, Colgate's Confidential Information regarding the formulas and manufacturing processes for the Company's toothpaste products.  (*Id.* ¶ 43.)  In fact, on August 9, 2017, unbeknownst to Colgate, Mr. Reci sent Arbnor Reci an email from his Colgate email address enclosing the proprietary formulas for several of Colgate's toothpaste products, including Hydris Toothpaste, an innovative dry mouth hydrating toothpaste.  (*Id.* ¶ 46, Ex. G.)  The email also enclosed the proprietary formula for Colgate's Simply Kids toothpaste, a brand of toothpaste specifically researched and designed for the highly competitive children's toothpaste market.  (*Id.* ¶ 47.)  In his cover email, Mr. Reci instructed his son to "[p]rint th[ese] formulas and file them."[1]  (*Id.* ¶ 47, Ex. G.)

The toothpaste formulas Mr. Reci accessed and emailed to his son are not available to the public at large and are unique to Colgate both in terms of the particular specifications of each of the listed components and the proportion of

---

[1]      In order to maintain the secrecy of its proprietary information, Plaintiff has not filed the attachments to the referenced emails – or any other document containing Colgate trade secrets.  However, Colgate will submit any document for *in camera* review upon request from the Court.

those components relative to one another.  (*Id.* ¶ 48.)  To those inside the Company, these formulas bear Colgate's signature, certain "backbone" features used in many of Colgate's products – the very essence of Colgate's identity and an assurance of quality and performance of the Company's products.  (*Id.*)  Mr. Reci's August 9, 2017 email also attached the formula for Reci Enterprises' Eurodent toothpaste.  Significantly, that formula contained certain Colgate signature "backbone" features that the Company has spent years and countless resources developing.  (*Id.* ¶ 49.)

Approximately two months later, on October 16, 2017, again unbeknownst to Colgate, Mr. Reci sent Arbnor Reci an email from his Colgate email address, enclosing Colgate's manufacturing process instructions for toothpaste products. (*Id.* ¶ 50.)  In his cover email, Mr. Reci told his son that he should "Read & Learn" from Colgate's Confidential Information.  (*Id.* ¶ 50, Ex. H.)

On September 6, 2018, the Macedonia Free Zones Authority, the governmental managing body responsible for developing various economic development zones in Macedonia, published a press release on its website stating that Mr. Reci's family business, Reci Enterprises, held a ground breaking ceremony for its new research and manufacturing facility in Macedonia.  (*Id.* ¶ 48, Ex. I.)

### 3.    Colgate discovers Mr. Reci's misconduct and terminates his employment.

On September 19, 2018, while Mr. Reci was on a medical leave from Colgate, the Company received an anonymous call to its Global Ethics and Compliance Hotline regarding Mr. Reci's misappropriation of the Company's Confidential Information (including Colgate formulas and manufacturing procedures), and his efforts to set up a competing business.  (*Id.* ¶ 52.) Specifically, the caller reported that he/she came across the press release that announced that Mr. Reci's family business, Reci Enterprises, was launching a personal care company in Macedonia.  (*Id.*)

Upon discovering Mr. Reci's malfeasance, Colgate immediately began investigating the extent of his misconduct and made several efforts to obtain explanations from Mr. Reci regarding his misappropriation of Colgate's Confidential Information, and to prevent the further misappropriation of Colgate's Confidential Information.  (*Id.* ¶ 56.)  As part of that investigation, in November 2018, Colgate called Mr. Reci on multiple occasions regarding the return of his Colgate-issued laptop computer, and on two separate occasions sent a prepaid box to Mr. Reci's home to facilitate the computer's return.  (*Id.* ¶ 57.)  Upon information and belief, Mr. Reci deliberately evaded these efforts in an attempt to improperly retain, access, and misuse the Company's Confidential Information.

(*Id.*)  Finally, on or about December 3, 2018, Colgate sent a security person to Mr.

Reci's home in New Jersey to retrieve his Colgate-issued computer.  (*Id.*)

A preliminary review of Mr. Reci's Colgate-issued laptop computer revealed

that, in the months before the return of his computer, while he was on a medical

leave of absence and not performing any work for the Company, Mr. Reci copied

Colgate's files from his laptop computer onto external storage devices.  (*Id.* ¶ 58.)

In fact, this review showed that Mr. Reci inserted eight (8) separate external

storage devices into the laptop between December 2, 2018 and December 3, 2018,

the day the computer was finally returned.  (*Id.*)  Colgate's review further showed

that, between March 2018 and December 2018, Mr. Reci accessed dozens of

documents from those devices (and others) and the laptop computer, and that some

of those files bore the name of specific Colgate products.  (*Id.*)

Further, Colgate's review of Mr. Reci's Internet browser history revealed

that, on many occasions between September 2018 and December 2018, Mr. Reci

accessed Colgate's internal, password-protected networks from his Company-

issued laptop computer.  (*Id.* ¶ 59.)  All of this activity occurred while Mr. Reci

was a Colgate employee on a medical leave of absence from the Company.  (*Id.* ¶

60.)

Ms. Reci also appears to have deleted substantial data in an apparent effort

to cover his tracks.  (*Id.* ¶ 61.)  Indeed, based on Colgate's preliminary review,

more than 17,000 individual files were deleted from Mr. Reci's Company-issued laptop while he was on a medical leave of absence, over 8,500 of which were deleted in November 2018 and December 2018, when Colgate began contacting Mr. Reci regarding the return of that device.  (*Id.* ¶ 62.)  Upon information and belief, Mr. Reci's mass deletion of files was intended to obfuscate his unlawful conduct.  (*Id.* ¶ 63.)

Since discovering Mr. Reci's misconduct, Colgate has made several unsuccessful attempts to contact him to discuss those unlawful activities.  (*Id.* ¶ 64.)  By letter dated December 26, 2018, Colgate terminated Mr. Reci's employment for material violations of Colgate's Code of Conduct, other Colgate policies, and applicable law.  (*Id.* ¶ 65.)

## III.   ARGUMENT

### A.   The Applicable Legal Standard For Granting A Temporary Restraining Order And A Preliminary Injunction.

To prevail on an application for a temporary restraining order or preliminary injunction, a plaintiff must show: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).  The moving party bears the burden of persuasion only with respect to the first two elements. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653

14

(3d Cir. 1994).  The third and fourth elements are factors which "the district court should take into account, when they are relevant."  *Id.*

Here, as demonstrated above and below, the facts compel the entry of a temporary restraining order and injunctive relief, preventing Defendants from further using or disclosing Colgate's valuable trade secrets and from continuing to threaten its other legitimate business interests.

### B. <u>Colgate Will Prevail On The Merits.</u>

Demonstrating a likelihood of success on the merits requires merely a "preliminary showing that [the plaintiff] is reasonably likely to prevail on the merits of its claim(s)." *Dam Things from Denmark v. Russ Berrie & Co.*, 173 F. Supp. 2d 277, 282 (D.N.J. 2001), *rev'd on other grounds*, 290 F.3d 548 (3d Cir. 2002). "[A] party need not prove that its success is certain, and is not expected to submit all of its proof." *Id.* at 566.  As set forth below, the allegations in the Verified Complaint easily satisfy the requirements of all of the causes of action contained therein.

### 1. Colgate will establish violations of the Federal Defend Trade Secrets Act and the New Jersey Trade Secrets Act. (Counts One and Two)

Colgate will prevail on its statutory trade secrets claims against Defendants. To establish a violation of the Defend Trade Secrets Act ("DTSA") and the New Jersey Trade Secrets Act ("NJTSA"), a plaintiff must show:  "(1) the existence of a

trade secret and (2) the misappropriation of that secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 2018 WL 1374023, at *6 (D.N.J. Mar. 16, 2018) (citing 18 U.S.C. § 1839(3), (5); N.J.S.A. 56:15-2).  Both requirements are satisfied here.

### a. Defendants possess trade secrets belonging to Colgate.

Under both the DTSA and the NJTSA, the "essential inquiry" for determining what constitutes "a trade secret is whether [1] the information derives economic value, [2] the information is not readily ascertainable by other means, and [3] the holder endeavors for it to remain confidential." *Id.* (citing *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 423 (D.N.J. 2016).  With this standard in mind, federal and state courts in New Jersey have recognized:

> A trade secret may consist of any **formula**, pattern, device or compilation of information which is used in one's business, and which **gives him an opportunity to obtain an advantage over competitors who do not know or use it**. It may be a **formula for a chemical compound, a process of manufacturing**, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

*Ameriprise Fin. Servs., Inc. v. Koenig*, No. CIV.A. 11-6140-NLH, 2012 WL 379940, at *6 (D.N.J. Feb. 6, 2012) (emphasis added) (quoting *Hammock by Hammock v. Hoffmann–LaRoche, Inc.*, 142 N.J. 356, 384, 662 A.2d 546 (1995)).

Here, the Confidential Information Mr. Reci unlawfully sent from his Colgate email account to his sons and business partners at Reci & Sons constitutes

protected trade secrets under state and federal law.  Indeed, Colgate's product

formulas and manufacturing instructions are at the very core of its business.  That

information has been developed and safeguarded over decades at significant effort

and expense to Colgate, and it is what makes the Company's products unique and

superior to that of its competitors both in terms of efficacy and consumer

experience.  Indeed, this information is the very essence of a trade secret and one

that Courts have recognized repeatedly is subject to protection.  *See, e.g., Grow*

*Co., Inc. v. Chokshi*, 2012 WL 715978, at *8 (App. Div. Mar. 7, 2012) ("[A] trade

secret 'may consist of a formula, process, device or compilation which one uses in

his business and which gives him an opportunity to obtain an advantage over

competitors who do not know or use it.'"); *Ameriprise Fin. Servs., Inc. v. Koenig*,

No. 11-6140-NLH–JS, 2012 WL 379940, at *6 (D.N.J. Feb. 6, 2012) (holding that

information related to strategies and techniques used in devising financial plans for

customers was a trade secret); *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, 2011

WL 773034, at *3-4 (D.N.J. Feb. 28, 2011) (recognizing that non-public

information such as research and development of a business's core product can be

a trade secret);  *Rycoline Prods., Inc. v. Walsh*, 334 N.J. Super. 62, 75 (App. Div.

2000) ("A trade secret may consist of any formula, pattern, device or compilation

of information which is used in one's business, and which gives him an

opportunity to obtain an advantage over competitors who do not know or use it.");

*Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 294-98 (Law Div. 1995) (holding that details about product packaging were proprietary and confidential information protectable through restrictive covenant).

Moreover, Colgate clearly derives independent economic value from maintaining the secrecy of this information because its business depends on being able to deliver oral care products that are superior to that of its competitors in a market that is intensely competitive. Furthermore, the methods used by Colgate to create its product formulas and manufacturing methods have taken years to develop, at a significant cost, which Reci & Sons or any competitor could improperly avoid if it had access to that information. This is why Colgate has taken significant steps to protect such trade secrets, as described above.

> **b.**     ***Defendants have misappropriated Colgate's trade secrets.***

The DTSA and the NJTSA employ the same standard for determining whether a trade secret has been misappropriated. Under both statutes, misappropriation is defined as:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by "improper means" **or**

> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:

>> (a) used improper means to acquire the trade secret; **or**

18

    (b) knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means at the time of disclosure or use; **or**

    (c) knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means before a material change of position.

N.J.S.A. 56:15-2; *see also* 18 U.S.C. § 1839(5)(B).  Both statutes define "improper means" to include "a breach of an express or implied duty to maintain . . . secrecy." N.J.S.A. 56:15-2; 18 U.S.C. § 1839(6)(B).

Here, Defendants unquestionably misappropriated Colgate's trade secrets. Mr. Reci sent Colgate's formulation and manufacturing information from his Company email account to his sons and business partners at Reci & Sons without Colgate's knowledge or authorization.  That information was then used to illicitly create products for Reci Enterprises, a subsidiary of Reci & Sons, with the intent to unfairly compete with Colgate in Macedonia.  Based on these facts, Colgate is likely to succeed on the merits of its claim that Defendants have misappropriated, and continue to misappropriate, the Company's trade secrets.

   **2.** **Colgate will establish that Mr. Reci breached his duty of loyalty while employed by Colgate (Count Three).**

Colgate will prevail on its claim for breach of the duty of loyalty against Mr. Reci.  Under New Jersey law, "[a]n employee has a duty, during his or her period of employment, not to act contrary to his employer's interest, not to compete with his or her employer, and not to assist an employer's competitor." *Lamorte Burns*

& *Co. v. Walters*, 167 N.J. 285, 302 (2001); *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 516 (1999). "The duty of loyalty prohibits the employee from taking affirmative steps to injure the employer's business." *Lamorte*, 167 N.J. at 305. Accordingly, "[a]ssisting an employer's competitor can constitute a breach of the employee's duty of loyalty," and so may "an employee's self-dealing." *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 516 (1999) ("To avoid the possibility of charges of disloyalty, employees generally should inform employers of their plans before establishing an independent business that might conflict with that of the employer.").

In this case, Mr. Reci was entrusted by Colgate with the very trade secrets that make the Company a global leader in oral care products. In breach of that trust, Mr. Reci stole those trade secrets to unlawfully replicate Colgate's toothpaste products and start his own business with his sons and business partners, directly competing with Colgate in the Macedonian market, all while still employed by Colgate. Mr. Reci did so without disclosing to Colgate his plan to establish an independent business that might compete with the Company, as required by the Code of Conduct. Even worse, the formula for Reci & Sons' "Eurodent" toothpaste contains certain of Colgate's signature "backbone" elements that are unique to, and only known by, the Company. If that is not a breach of the duty of loyalty, nothing is. Courts, in fact, "have recognized the damage a former disloyal

employee is able to inflict on his employer . . . where he has launched or assisted a competing business while he is employed." *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 303 (Law. Div. 1995) (citing *United Board & Carton Corp. v. Britting*, 63 N.J.Super. 517, 524, 530 (Ch. Div. 1959) (collecting cases), aff'd, 61 N.J. Super. 340 (App. Div.), certif. denied, 33 N.J. 326 (1960); *see also Baseline Servs., Inc. v. Kutz*, No. A-5214-09T3, 2011 WL 3714974, at *3 (App. Div. Aug. 25, 2011) (finding breach of duty of loyalty where plaintiff, while still employed by plaintiff, actively solicited a contract for plaintiff's direct competitor, and planned to defect to competitor); *Lamorte*, 167 N.J. at 305 (same where defendants "intentionally began a process of subverting their employer's business while still employed," including "gathering by stealth plaintiff's legally protected information admittedly to seek an advantage in competing with plaintiff once they resigned").[2]

### 3. Colgate will establish that Defendants engaged in unfair competition and were unjustly enriched (Counts Four and Five).

Colgate will prevail on its unfair competition and unjust enrichment claims against Defendants.  Under New Jersey law, claims for unfair competition are

---

[2]    "If a plaintiff establishes the existence of a duty of loyalty and breach, damages can include profits the employee earned in the other enterprise while still employed, compensation for injury caused by the breach, and forfeiture of the employee's compensation."  *Bldg. Inspection Underwriters, Inc. v. Mun. Code Inspections, Inc.*, No. A-2605-13T3, 2016 WL 1589870, at *5 (N.J. Super. Ct. App. Div. Apr. 21, 2016).

intended "to promote higher ethical standards in the business world.  Accordingly, the concept is deemed as flexible and elastic as the evolving standards of commercial morality demand." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87 (App. Div. 2001) (internal quotation marks and citations omitted). Such claims are "commonly invoked" in cases involving the "misappropriation of trade secrets." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 386–87 (3d Cir. 2016).   However, an unfair competition claim "protects more information than a traditional trade secrets claim." *Id.*  When determining whether such information has been unfairly used, courts examine "the relationship of the parties at the time of disclosure, and its intended use*." Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 314 (D.N.J. 2013).  Under this standard, violations typically occur where "an ex-employee uses confidential information to assist a competitor," and the information at issue was detailed, not public, and "was provided in the course of employment for the sole purpose of servicing clients," and "the party using the information is aware of the information holder's interest in protecting the information." *Id.*

Here, Defendants' sole aim appears to be setting up domestic and foreign businesses to unfairly compete with Colgate in Macedonia, using proprietary formulas and manufacturing specifications stolen from Colgate.  In fact, Defendants' own business plan reveals that Reci & Sons's subsidiary in

Macedonia, Reci Enterprises, expects to generate over $2 million in its first few years selling Eurodent – a product manufactured and designed using Colgate's misappropriated trade secrets.  (Compl. ¶ 41.)  That Mr. Reci knew the value of this information in starting a competing toothpaste business, and concealed his theft by attempting to delete any trace of his activities from his Company-issued laptop computer, further demonstrates the severity of Defendants' tortious conduct.

The facts of this case epitomize unfair competition.  And any benefit Defendants derive from their misconduct constitutes unjust enrichment, including any profit generated by Reci & Sons and its affiliated company in Macedonia from its ill-gotten trade secrets.  *See McCalley v. Samsung Electronics America, Inc.*, No. 07-2141 (JAG), 2008 WL 878402 at *10 (D.N.J. Mar. 31, 2008) (unjust enrichment requires "the defendant has received a benefit from the plaintiff" and "the retention of the benefit by the defendant is inequitable" (internal quotation marks omitted)); *Napier v. Pub. Serv. Elec. & Gas Co.*, No. A-4532-12T1, 2014 WL 3444670, at *3 (App. Div. July 15, 2014) (if successful on unjust enrichment claim, "under general principles of equity the court may require the wrongdoers to account for their profits so that as nearly as may be the parties will be protected and equity done") quoting *Driscoll v. Burlington–Bristol Bridge Co.*, 8 N.J. 433, 499, cert. denied, 344 U.S. 838 (1952)), aff'd in part and rev'd in part, 186 N.J. 46 (2006).

### 4. Colgate will establish that Mr. Reci breached the confidentiality provisions in his employment application and Colgate's Code of Conduct (Count Six).

Colgate will prevail on its breach of contract claim against Mr. Reci.  To establish such a claim, a plaintiff must prove that (1) the parties entered into a valid contract, (2) the defendant failed to perform its obligations under the contract, and (3) that the plaintiff sustained damages as a result.  *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007).  An agreement restricting employment activities is valid if it is necessary to protect an employer's legitimate interests, is not unduly burdensome, and it is not injurious to the public interest.  *Karlin v. Weinberg,* 77 N.J. 408 (1978).

Here, Mr. Reci entered into a valid contract with Colgate by virtue of his assent to the confidentiality provisions in his employment application and the Company's Code of Conduct.  Indeed, Mr. Reci signed his job application, agreeing "not to disclose . . . any trade secrets or information . . . acquired from the Company."  (Compl. ¶ 29.)  He likewise electronically signed a form, acknowledging that he "read, understood and complied with all provisions of the Code of Conduct," and that he would "continue to comply with the provisions of the Code of Conduct."[3]  (*Id.* ¶ 31.)  Those agreements were valid and required that

---

[3]     Mr. Reci also violated the Code of Conduct by failing to disclose to Colgate his plan to start a competing business and also by operating that business in direct competition with Colgate in Macedonia.  (Compl. ¶¶ 19, 20, 38.)

Mr. Reci protect Colgate's trade secrets—a statutorily protected right that clearly serves the public interest.  There can be no dispute that Mr. Reci violated his contractual confidentiality obligations (not to mention his common law ones) when he disclosed Colgate's proprietary formulation and manufacturing information to his sons for use in a competing business.  Finally, as a result of that breach, there is no question that Colgate has suffered, and will continue to suffer, damages by virtue of the loss of its trade secrets, which are now being used to diminish Colgate's market share in the oral care sector in Macedonia.

> **5.    Colgate will establish that Defendants tortiously interfered with Mr. Reci's contractual obligations to the Company (Count Seven).**

Colgate will succeed on its tortious interference with a contract claim against Defendants.  To prevail on such a claim, a plaintiff must establish "(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages."  *Velop, Inc. v. Kaplan*, 301 N.J. Super. 32, 49 (App. Div. 1997).

Here, Reci & Sons, and its owners, including Defendants Arbnor and Alim Reci, interfered with Mr. Reci's contractual confidentiality obligations to Colgate. Although Reci & Sons clearly knew that its owner, Mr. Reci, was bound to protect the secrecy of Colgate's Confidential Information, it interfered with those obligations by inducing Mr. Reci to disclose Colgate's trade secrets for the purpose

of establishing a competitive business through Reci & Sons's subsidiary, Reci Enterprises, in Macedonia. Reci & Sons' actions has resulted in the loss of consideration bargained for by Colgate, and has caused damages to the Company by, among other things, causing irreparable injury to Colgate's business in Macedonia. *See LifeCell Corp. v Tela Bio, Inc.*, No. SOM-C-12013-15, 2015 WL 4082323, at *33 (N.J. Ch. Div. May 12, 2015) (enjoining defendant from competing on tortious interference theory where defendant "openly, consciously, and repeatedly ignored a competitor's reasonable restrictive covenants with its employees"); *Score Bd. v. Upper Deck Co.*, 959 F. Supp. 234, 239 (D.N.J. 1997) (plaintiff likely to prevail on tortious interference claim where competitor interfered with contractual restrictions).

### 6. Colgate will establish that Defendants tortiously interfered with the Company's economic advantages with existing customers (Count Eight).

Colgate's claim against Defendants for tortious interference with economic advantages will prevail. To establish this claim, a plaintiff "is required to show [1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of the defendant's malicious interference, and [3] that it suffered losses thereby." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 198-99 (App. Div. 1995) (citation omitted). The first element does not require the existence of a contract, only "a reasonable expectation of economic

gain in as slight an interest as prospective public sales." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 753 (1989). Malicious interference sufficient to satisfy the second element requires conduct that is "is fraudulent, dishonest, or illegal." *Ideal Dairy Farms*, 282 N.J. at 205. To satisfy the third element, "[i]t is sufficient that plaintiff prove facts which, in themselves or by the inferences which may be legitimately drawn therefrom, would support a finding that, except for the tortious interference by the defendant with the plaintiff's business relationship with [another party], plaintiff would have consummated the sale and made a profit." *McCue v. Deppert*, 21 N.J. Super. 591, 596-97 (App. Div. 1952).

In this case, all three elements are easily established. First, Colgate had a reasonable expectation of an economic advantage with respect to its sales in Macedonia. Colgate, in fact, is the leading oral care brand in Macedonia. Defendants now seek to steal market share from Colgate by offering copy-cat products at a lower price that is only achievable because Defendants have had to spend <u>no</u> money developing their own formulas or production methods, as Colgate has done. Defendants' conduct was not only dishonest, it violated state and federal misappropriation laws, as demonstrated above. And, finally, Colgate will establish that Defendants' interference with the Company's customer base in Macedonia has or inevitably will result in damages.

**7.    Colgate will establish that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Nine).**

Colgate will succeed on its claim that Defendants violated the Computer Fraud and Abuse Act ("CFAA").  To establish such a claim, a plaintiff must show that defendants "(i) knowingly and with intent to defraud, (ii) accessed a protected computer, (iii) without authorization, and as a result (iv) has furthered the intended fraudulent conduct and obtained anything of value."  *Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 790 (M.D. Pa. 2017) (citation and internal quotation marks omitted).  Here, as demonstrated above, Defendants, through Mr. Reci, knowingly and intentionally accessed a Colgate-issued computer and the Company's computer networks and, without authorization from Colgate, downloaded highly valuable trade secrets and proprietary Company information for purposes of unfairly competing with Colgate.  Such conduct constitutes a violation of the CFAA.  *See Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 326 (M.D. Pa. 2014) ("Caselaw supports an employer's use of the CFAA's civil remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system.").[4]

---

[4]    Plaintiff will also succeed on its conversion claim (Count Ten), as Defendants knowingly "exercise[d] dominion and control" over Colgate's trade secrets and other Confidential Information, and their possession thereof for

## C.   Colgate Will Suffer Irreparable Harm If The Injunction Is Denied.

Absent an injunction, Colgate will suffer irreparable harm.  Harm is irreparable if it cannot be adequately redressed by damages. *Subcarrier Comm'n, Inc. v. Day*, 299 N.J. Super. 634, 638 (App. Div. 1997).  To establish the requisite element of "irreparable injury," plaintiff need only show a "likelihood" of such harm. *See Wyrough & Loser, Inc. v. Pelmer Laboratories, Inc.*, 376 F.2d 543 (3d Cir. 1967); *Industrial Elecs. Corp. v. Cline*, 330 F.2d 480, 483 (3d Cir. 1964) (injunction should be granted if irreparable injury "would possibly result" if relief were denied).

Here, it is impossible to estimate the amount of damages Colgate would suffer if Defendants' misconduct continues unabated.  As discussed above, Mr. Reci had access to, and, in fact, disclosed trade secrets at the very core of Colgate's business, including product formulas and manufacturing instructions.  This disclosure to a direct competitor cannot be quantified by pecuniary damages alone, and the full extent of the injury may likely never be discovered.  Indeed, "[m]any courts have found that injunctive relief is the appropriate remedy due to disclosure of trade secrets."  *Ameriprise Fin. Servs., Inc. v. Koenig*, No. CIV.A. 11-6140-NLH, 2012 WL 379940, at *7 (D.N.J. Feb. 6, 2012) (collecting cases).

---

purposes of engaging in unfair competition is "inconsistent with [Colgate's ownership] rights."  *LaPlace v. Briere*, 404 N.J. Super. 585, 595 (App. Div. 2009).

At this very moment, Defendants are using Colgate's trade secrets to manufacture products to be marketed and sold to the Company's customers and consumers in Macedonia and beyond.  Absent a preliminary injunction, Colgate will be helpless to curb this ongoing misconduct, which, in itself, is evidence of tangible and irreparable harm.  As the New Jersey Appellate Division aptly stated, "[d]amages will not be an adequate remedy when the competitor has obtained . . . secrets.  The cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss." *National Starch & Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158, 163 (App. Div. 1987) (granting temporary restraining order and preliminary injunction to prevent disclosure by former employee of confidential and proprietary information and employment of him by competitor in subject area of former employment).

### D.    The Balance Of Equities Weighs In Favor Of Colgate.

Colgate seeks to enjoin any and all conduct involving the misappropriation of the Company's trade secrets, and to do so requires the complete cessation of all competitive business activities by Defendants.  Specifically, Colgate seeks to enjoin any further use or disclosure of the Company's trade secrets and other proprietary information by Defendants, and any business activities by the individual defendants that competes with Colgate.  In fact, Colgate requests the Court to enjoin all business operations of Reci & Sons, which is a consumer

hygiene and cleaning products company that was created solely to unfairly

compete with Colgate by using the Company's own trade secrets against it.  The

significant risk and irreparable damage Colgate faces to its business absent an

injunction far outweighs any potential harm to Defendants.  Such damage to

Colgate includes the loss of customer relationships and consumer loyalty, and

continued dissemination of the proprietary formulation and manufacturing

information it has spent years and countless other resources developing –

information Mr. Reci agreed to protect.  "Courts have routinely found the equities

favor the party seeking to prevent the misappropriation of trade secrets." *Par

Pharm.*, 2018 WL 1374023, at *9 (collecting cases).

### E.  <u>Public Policy Strongly Favors An Injunction Against Defendants.</u>

At the heart of this case is the theft of invaluable trade secrets.  The Court of

Appeals for the Third Circuit has expressly recognized "a general public interest in

the upholding the inviolability of trade secrets and enforceability of confidentiality

agreements." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir.

2010).  As such, public policy clearly favors the issuance of a temporary

restraining order and an injunction.  *See Payroll Assocs., LLC v. Adaptasoft, Inc.*,

No. 12CV6375NLHJS, 2012 WL 12888566, at *2 (D.N.J. Oct. 24, 2012) (granting

preliminary relief and recognizing the public policy favoring the protection of trade

secrets); *Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. 06–567, 2006 WL 1517382,

at *21 (E.D. Pa. May 31, 2006) ("Granting equitable relief such as a preliminary injunction may serve the public interest if it will 'discourage . . . the wrongful use of confidential information and trade secrets and the disavowal of freely contracted obligations.'") (quoting *National Business Services, Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998)).

### F.    The Court Should Grant Colgate Leave To Take Expedited Discovery.

Expedited discovery is warranted in this case to ensure the preservation of crucial evidence and to allow Colgate to determine the extent of Defendants' trade secrets misappropriation.  Federal Rule of Civil Procedure 26(d)(1) affords this Court discretion to order expedited discovery in cases "such as those involving requests for a preliminary injunction."  Fed. R. Civ. P. 26(d)(1), Advisory Committee Note (1993).  Courts routinely order expedited discovery in cases involving trade secrets misappropriation.  *See, e.g.*, *Samuel, Son & Co. v. Beach*, No. CIV.A. 13-128, 2013 WL 4855325, at *4 (W.D. Pa. Sept. 11, 2013) (finding expedited discovery appropriate in trade secrets case given the expedited nature of injunction and the fact that the requests were limited); *IMS Health Info. Sols. USA v. Lempernesse*, No. CV 15-7561 (JLL), 2016 WL 236214, at *1 (D.N.J. Jan. 19, 2016) (ordering expedited discovery including the "return [of] all tangible trade secrets and other proprietary information in his possession to Plaintiff"); *Heraeus Materials Tech. LLC v. Tung Pham*, No. CV 11-2965, 2011

32

WL 13227695, at *1 (E.D. Pa. June 29, 2011) (expedited discovery in trade

secrets case); *Bimbo Bakeries USA, Inc. v. Botticella*, No. CIV.A. 10-0194, 2010

WL 571774, at *1 (E.D. Pa. Feb. 9, 2010) (same), aff'd, 613 F.3d 102 (3d Cir.

2010).

 The Court should exercise its broad discretion to permit Colgate to engage in

expedited discovery to:  (i) depose all Defendants; (ii) compel the return of all

Colgate property, including all company-issued devices and confidential and trade

secrets information belonging to the Company, however stored; (iii) permit

Plaintiff to serve Interrogatories, Requests for the Production of Documents and/or

Requests for Admission upon Defendants, including requests for the production of

any electronic mail or communications (including on Mr. Reci's personal devices)

sent between the Defendants regarding the illegal misappropriation of Colgate's

confidential information and trade secrets; and (iv) compel the production of all

electronic storage devices and passwords for all cloud storage and email accounts

(including personal devices and accounts) used to download Colgate information

for purposes of conducting a forensic analysis of those devices and accounts and to

arrange for the permanent destruction of any and all Coalgate information in

Defendants' possession, custody, or control.  This relief will provide Colgate with

reasonable means to preserve information crucial to the case and to protect its trade secrets and confidential information.[5]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should issue a temporary restraining order and a preliminary injunction, and it should grant expedited discovery as set forth in the attached Order to Show Cause.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
*Attorneys for Plaintiff Colgate-Palmolive*
*Company*

Dated:  December 26, 2018          s/ Terry D. Johnson     
                                   David A. McManus
                                   Terry D. Johnson
                                   Jason J. Ranjo

---

[5]     Consistent with these requests, Plaintiff also asks that Defendants be prohibited from publicly filing any documents in this case that disclose any specific information regarding the products of Colgate, Reci & Sons or any of its affiliate companies, including, but not limited to, formulas and manufacturing instructions.  Because Colgate trade secrets were used to design and create those products, such public disclosure would irreparably harm Plaintiff.